UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WHO DAT YAT CHAT, LLC                    CIVIL ACTION

VERSUS                                   NO: 10-1333

WHO DAT? INC.                            SECTION: J (4)


ORDER AND REASONS

Before the Court is Defendants NFL Properties LLC ("NFL") and New Orleans Louisiana Saints, LLC ("the Saints")'s **Motion to Dismiss (Rec. Doc. 27)**, Plaintiff Who Dat?, Inc. ("WDI")'s **Opposition (Rec. Doc. 38)**, and Defendants' **Reply (Rec. Doc. 39)**. Subsequently, Plaintiff filed the **Third Amended Complaint (Rec. Doc. 41)** and Defendants answered **(Rec. Doc. 48)**. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendants' **Motion to Dismiss (Rec. Doc. 27)** should be **GRANTED in part** and **DENIED in part**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Plaintiff WDI initiated this suit,[1] alleging that, as the rightful owner of the "WHO DAT" trademark, it is entitled to

---

[1]The instant Motion to Dismiss pertains to case captioned <u>Who Dat, Inc. v. NFL Properties, LLC, et al.</u>, 10-2296, which has been consolidated with the above-captioned matter.

1

declaratory relief, cancellation of the trademarks obtained by the Saints on or after February 16, 2007, permanent injunction, and damages for fraudulent registration, breach of contract, deceptive advertising under Louisiana law, common law unfair competition, common law trademark infringement, state statutory trademark infringement, federal unfair competition, federal dilution, federal commercial and product disparagement, negligence, and fraud (Rec. Doc. 41).

According to its Complaint, WDI is a company owned by two brothers (Sal and Steve Monistere) who claim to be the founding members of the "WHO DAT NATION." WDI asserts that it developed and nurtured the phrase "WHO DAT" for over twenty-five years and believes it was uniquely positioned to reap substantial financial rewards in connection with the 2009-2010 National Football League season.  WDI claims that it derives income in the form of royalty payments and licensing fees from its Licensees from the sale of merchandise bearing the "WHO DAT" trademarks.

In 1988, the Saints allegedly approached WDI about creating the "Who Dat! Fan Club," which offered lifetime memberships to Saints fans.  According to WDI, the Saints agreed to transfer, assign, and convey to WDI whatever right, title and interest the Saints had or claimed to have had in the trademark "WHO DAT!", recognized WDI as the first user of "WHO DAT," and acknowledged that as the first user WDI had exclusive right to use the mark. Many of WDI's claims in this lawsuit arise from the "Incentives

2

Agreement" and the "Transfer, Assignment, and Conveyance" that accompanied the deal. Since entering that contract, disputes arose between WDI and Defendants as to the validity and scope of each party's interest in the "WHO DAT" trademark  (Rec. Doc. 41).

WDI brought this suit against the Saints, NFL, the State of Louisiana, the Secretary of State of Louisiana, and certain retailers.  This Motion to Dismiss by Defendants followed.  After the original Motion to Dismiss (Rec. Doc. 27) was filed, WDI submitted a Third Amended Complaint (Rec. Doc. 41), which omits three of the claims challenged by the Defendants' motion. Accordingly, the motion to dismiss the following claims is moot: (a) tortious interference with contract; (b) conspiracy; and (c) claims arising under Florida state trademark law.

In its Reply, the NFL apparently abandons its motion to dismiss as to the Louisiana state trademark infringement and dilution laws (Rec. Doc. 39, p. 9).  The following claims, labeled according to WDI's Third Amended Complaint (Rec. Doc. 41), remain contested in this Motion to Dismiss: breach of contract (Count #5); negligent misrepresentation (Count #12); fraudulent misrepresentation (Count #13); damages under Louisiana's trademark cancellation statute (Count #2); and federal disparagement (Count # 11).

**LEGAL STANDARD:**

Under the Federal Rules of Civil Procedure, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949. "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc</u>., 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 129 S.Ct. at 1949-50.

**THE PARTIES' ARGUMENTS AND DISCUSSION:**

**<u>Breach of Contract (Count 5)</u>**

According to WDI's Third Amended Complaint, WDI entered a contract – the Incentives Agreement – with Sports/Celebrity

4

Incentives, Inc.("SCI") as an agent of the Saints in September 1988.  Under the contract, the Saints agreed to recognize WDI's ownership of the "WHO DAT" trademark, to recognize the validity of the trademark, to acknowledge WDI's exclusive right to use the trademark, to cooperate with WDI by defending its right to the trademark and refraining from any activity that challenges WDI's rights in the trademark. Specifically, the Incentives Agreement required the Saints to immediately assign, transfer, and convey to WDI its Louisiana "WHO DAT" service mark registration.  WDI alleges that the Saints breached that contract on and after February 16, 2007, when the Saints registered for various "WHO DAT" trademarks in Louisiana and elsewhere.  During that time, WDI also alleges that Defendants, in violation of the contract, specifically and/or impliedly failed to recognize WDI's commercial use of the "WHO DAT" trademark, the validity of the trademark, the goodwill attributable to the trademark, and that Defendants failed to defend WDI's right, title, and interest to the trademark. WDI claims it suffered damages as a result of the breach, and seeks all available remedies and damages, including specific performance.

Defendants claim that WDI's breach of contract claim is time-barred and should be dismissed.  Under Tennessee law, which governs the contract, the statute of limitations for breach of contract is six years and accrues from the date of breach or when

one party demonstrates a clear intention not to be bound by the contract.  Wilkins v. Third Nat'l Bank of Nashville, 884 S.W. 2d 758, 761-62 (Tenn. Ct. App. 2002); Tenn. Code Ann. § 28-3-109 (1976).  Defendants reason that, accepting WDI's allegations as true, the accrual date for the breach of contract began as early as September 1988, when the Saints allegedly failed to perfect the assignment of the Louisiana trademark registration.  Alternatively, the claims accrued no later than September 1998 when the Saints renewed the registration.

However, WDI's Third Amended Complaint supercedes that argument. The "duration" clause in the Incentives Agreement provides that it "shall commence from June 25, 1988 and shall remain in effect as long as the New Orleans Saints Limited Partnership uses the Who Dat name in connection with its fan club . . . ." (Exhibit L, ¶ 5).  The Fan Club launched in September 1988 and provided "*life memberships* for WHO DATs everywhere." (Rec. Doc. 41, ¶ 55) (emphasis added).

A court is required to draw "all reasonable inferences in favor of the plaintiff" when considering a motion to dismiss. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009).  It is reasonable to infer that, by virtue of the *lifetime* memberships extended to members of the fan club, the Incentives Agreement remains in effect.  WDI alleges that Defendants breached the contract in February 2007, which is less than six

6

years before WDI filed this lawsuit.  Therefore, on the face of the complaint, WDI's allegations that the Defendants are liable for breach of contract are sufficient to survive Defendant's Motion to Dismiss and that Motion should be **DENIED.**

**Louisiana's Cancellation Statute (Count 2)**

WDI seeks relief under several subsections of Louisiana's trademark statute, La. R.S. § 51:211, *et seq.* (1968), including § 51:219 ("Cancellation").  WDI requests that this Court "order the [Defendants] to take all steps necessary to cause the Louisiana Secretary of State to transfer to [WDI] (or in the alternative, cancel) each registration obtained for "WHO DAT" and variations thereof obtained by the Saints on or after February 16, 2007." Further, WDI seeks "all of the available damages and remedies available under the law for itself " (Rec. Doc. 41, p. 45).

Defendants argue that § 51:219 is purely administrative in nature; while it permits cancellation under certain circumstances, it does not provide for money damages.  They rely on cases such as <u>Romero v. Becken</u>, 256 F.3d 349, 354-55 (5th Cir. 2001) for the proposition that a claim should be dismissed when it seeks money damages which are unavailable under the relevant statute.

La. R.S. § 51:219 describes the situations in which the Secretary of State "shall" cancel a trademark registration. Specifically, it provides, *inter alia*, that the Secretary of

7

State shall cancel

 (4) Any registration concerning which a court of competent jurisdiction shall find

 (a) that the registered mark has been abandoned,

 (b) that the registrant is not the owner of the mark,

 (c) that the registration was granted improperly,

 (d) that the registration was obtained fraudulently.

La. R.S. § 51:219(4).

 Furthermore, the statute permits a court of competent jurisdiction to order the cancellation of a trademark registration on "any grounds."  When read in conjunction with the statute's other subsections, it appears that § 51:219 lays out several remedies, one of which is cancellation.  Other subsections provide a plaintiff with claims for injunctive relief (§ 223), damages incurred as a result of the statute's violations (§ 221), profits received by an infringing party (§ 223), and the seizure and destruction of any remaining infringing merchandise (§ 223).

 Cases cited by Defendants are distinguishable from the facts here.  For example, Romero involved a plaintiff who sought $100 million in damages under the Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C.S. § 3001 *et seq*.  Like the statute in Romero, La. R.S. § 51:211 *et seq.* gives the court broad power to issue such orders as may be necessary to

8

enforce the Act.  However, unlike the Louisiana trademark
statute, NAGPRA does not contain a subsection which authorizes
money damages; it only authorizes civil penalties and
Congressional appropriations for funds required to carry out the
Act.  Further, the plaintiff's claim in <u>Romero</u> was dismissed
because the wrongful act did not occur on the requisite federal
situs.  256 F.3d at 354.  Thus, the plaintiff in <u>Romero</u> pled no
facts under which recovery could have been granted under those
provisions.  Although La. R.S. § 51:219 does not provide for
monetary damages, it does empower the Court to make findings and
issue orders with respect to the trademark registration at hand.
The mere fact that WDI's complaint broadly seeks all available
damages and relief the law may provide is not grounds to dismiss
the claim. The Motion on this issue should be **DENIED.**

**Federal Disparagement (Count 11)**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B),
provides that any person who uses a communication "in commercial
advertising or promotion [that] misrepresents the nature,
characteristics, qualities, or geographic origin of . . . goods,
services, or commercial activities. . . shall be liable in a
civil action by any person who believes that he or she is or is
likely to be damaged by such act." Defendants aver that WDI
failed to allege sufficient facts to support a claim of
commercial and product disparagement under the Lanham Act.

9

First, the Defendants claim that WDI does not identify specific statements made by Defendants about WDI's "goods, services, or commercial activities."  Second, Defendants argue that the Complaint does not sufficiently allege statements made in connection with "commercial advertising or promotion."

WDI bases its disparagement claim on statements made by the Defendants "in the press and elsewhere" disputing WDI's ownership of and interests in the "WHO DAT" trademark  (Rec. Doc. 41, ¶ 162).  WDI contends that the speech was sufficiently "commercial" in nature to support a § 43(a) claim.  Specifically, WDI reasons that, although the statements were not made in connection with an advertisement, they were made "with the intent to interfere with WDI's ability to participate in the "WHO DAT" trademarks and other economic interests" (Rec. Doc. 41, ¶ 164).

The Fifth Circuit adopted the Supreme Court's  test for determining whether a non-promotional communication is nonetheless commercial in nature.  Those factors are whether: (1) the communication was an advertisement; (2) referred to a specific product; and (3) the speaker had economic motivation for the speech.  Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539, 547-49 (5th Cir. 2001) (citing Bolger v. Youngs Drug Products Corp., 43 U.S. 60, 66 (1983)).  Here, WDI does not allege the statements were made by the Defendants as part of an advertisement.  Further, the statements did not disparage any

particular product or service that WDI provides; rather, they stated an opinion regarding the status of the "WHO DAT" trademark, which happened to be unfavorable to WDI's commercial interests.  As to the third factor, the Fifth Circuit has explained:

> The requirement of finding an economic motivation
> to label something commercial speech does not
> require a finding that the speech was false or that
> the speaker knew the speech was false before making
> it, but only a motive to profit by the speech. Once
> that motive is found, *and if the other* Bolger
> *elements are present to provide strong support that*
> *the speech is commercial*, the speech is dropped to
> the less-protected status of commercial speech, and
> a suit may be successful against the speaker
> regardless of his knowledge of falsity.

Proctor & Gamble Co., 242 F.3d 539, 552 n.26 (5th Cir. 2001) (emphasis added). WDI theorizes that Defendants' "malicious" statements were intended to harm WDI economically.  In addition, WDI implies that others, including the Defendants, would make profits by trading on the goodwill of WDI's mark as a result of the confusion created as to the mark's ownership.

In essence, WDI alleges that the Defendants adopted a "scorched earth" approach to the "WHO DAT" ownership by publicly

disputing the validity of WDI's claims to the mark.  This is more appropriately described as "trademark disparagement" because WDI does not claim that the Defendants defamed any of its specific products or services.  The United States Court of Appeals for the Ninth Circuit  is one of few courts to address this issue, and held that trademark disparagement is not a valid cause of action under section 43(a) of the Lanham Act.  <u>Freecycle Network, Inc. v. Oey</u>, 505 F.3d 898, 905 (9th Cir. 2007).

In <u>Freecycle Network</u>, a plaintiff-corporation that unsuccessfully attempted to register the term "freecycle" as a trademark brought suit against one of its members under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (2006).  The defendant-member believed the term was too generic to receive trademark protection and launched an online campaign against the company's effort to register the term.  The defendant encouraged the public to use the term in its generic sense and to write letters to the PTO opposing the plaintiff's registration. <u>Freecycle Network</u>, 505 F.3d at 901.  The Ninth Circuit concluded that the defendant's use of the term could not be considered "in commerce" because it was not likely to create confusion about plaintiff's products or services.  <u>Id.</u> at 905-906.  The Ninth Circuit's reasoning is sound and is not inconsistent with <u>Amway</u>, where the defendant allegedly defamed the plaintiff's commercial *services*.  242 F.3d at 543.

Even when the primary purpose of the speech is economic, that does not necessarily indicate the speech is "commercial." Amway, 242 F.3d at 553.  In fact, "finding *all three factors* merely provides strong support for the proposition that the speech is commercial."  Id. (emphasis added).  Here, even making every inference in favor of WDI, only the third factor is present.  Accordingly, WDI has not adequately pled a claim for disparagement under the Lanham Act. Defendants' Motion should be **GRANTED.**

**Negligent Misrepresentation (Count 12)**

Defendants argue that the negligent misrepresentation claim should be dismissed for two reasons: (1) all statements made before March 2009 are time-barred under Louisiana's one-year prescriptive period for delictual claims, and (2) the Complaint is legally insufficient because the only statement not time-barred was made to the public, not WDI, and Defendants did not have a duty to provide the public with correct information.

According to WDI, negligent misrepresentations were made to third parties as early as 2006, again in 2007, when it filed paperwork to be recognized as the owner of the "WHO DAT" trademark with the State of Louisiana, and the United States Patent and trademark Office. NFL's representative, Bryan McCarthy, allegedly made material misrepresentations to the public in late 2009, and the Defendants sent "cease and desist"

13

letters containing misrepresentations to third parties in late 2009 and early 2010.

WDI urges that the claims arising from statements made before September 2009 are not time-barred under the doctrine of *contra non valentem*. WDI insists that it did not have actual or constructive knowledge of Defendant's misrepresentations before that time, and prescription should not accrue against those claims.  WDI asserts that the Saints had not used the trademark since its assignment. Although it misrepresented the filing of the written assignment with the Louisiana Secretary of State, WDI had no reason to believe that the Saints had acted contrary to the previous assignment and Incentives Agreement the Saints executed until after it approached the Saints in September 2009 concerning the prospect of working together once again.

In response, Defendants insist that *contra non valentem* does not apply to WDI's claims, because inexcusable ignorance does not toll prescription.  Davis v. A.G. Edwards & Sons, Inc., 823 F.2d 105, 107 (5th Cir. 1987).  WDI should have known about Defendants' representations, and if it did not, the ignorance is attributable to the Plaintiff's own willfulness or neglect. Defendants argue that WDI "cannot on the one hand contend. . . that it continuously took action to protect the WHO DAT designation . . . and then, in the same breath, assert that it was completely unaware of its statutory obligations to renew [its

14

Louisiana trademark registration]" (Rec. Doc. 39, p. 9).

Additionally, Defendants claim that WDI has not sufficiently pled the elements of a negligent misrepresentation claim. Defendants argue that a WDI must show (1) that the defendant owed a duty to provide correct information, (2) a breach of that duty, and (3) resultant injury. <u>Devore v. Hobart Manuf. Co.</u>, 367 So. 2d 836, 839 (La. 1979).

First, WDI argues that a "special relationship" existed between itself and Defendants, which required Defendants to exercise reasonable care when making representations about the ownership of the "WHO DAT" trademarks. WDI seems to suggest that the Incentives Agreement gave rise to that special relationship. Further, WDI claims that Defendants failed to exercise reasonable care when making "inaccurate, false, and misleading" "public and private representations to third parties and WDI," disputing WDI's ownership of the trademark (Rec. Doc. 41, ¶ 170). Finally, WDI alleges that these misrepresentations created confusion as to the ownership of the trademark, resulting in damages. Before the misrepresentations, WDI claims, it was "poised to enter into substantial contracts with companies like Coca-Cola." However, as a result of Defendant's statements, WDI was unable to capitalize on these corporate opportunities (Rec. Doc. 41, p. 63).

WDI has asserted a claim of negligent misrepresentation alleged to have caused pecuniary loss. The elements necessary to

prove such a claim differ from those needed to prove negligent
misrepresentation that results in physical harm.  Devore v.
Hobart Mfg. Co., 367 So. 2d 836, 839 (La. 1979).  For the cause
of action to arise there must be a legal duty on the part of the
defendant to supply correct information, there must be a breach
of that duty, and the breach must have caused plaintiff damage.
Barrie v. V.P. Exterminators, 625 So. 2d 1007, 1015 (La. 1993).
Whether a duty is owed is a question of law.  Id.  In deciding
whether to impose a duty in a particular case, Louisiana courts
examine "whether the plaintiff has any law-statutory,
jurisprudential, or arising from general principles of fault-to
support his claim" that a duty exists.  Faucheaux v. Terrebonne
Consol. Gov't, 615 So. 2d 289, 292 (La. 1993); Audler v. CBC
Innovis Inc., 519 F.3d 239, 249 (5th Cir. 2008).  The Louisiana
Supreme Court has also explained that:

> Louisiana's case by case development of the tort of
> negligent misrepresentation has not been restricted to
> a set theory. It has been broadly used to encompass
> situations of nondisclosure in fiduciary relationships,
> to situations of direct disclosure to non-clients.
> Adopting one of the common law standards as the sole
> method for determining liability for this tort is not
> necessary. The case by case application of the
> duty/risk analysis, presently employed by our courts,

16

adequately protects the misinformer and the misinformed

because the initial inquiry is whether, as a matter of

law, a duty is owed to this particular plaintiff to

protect him from this particular harm.

<u>Barrie</u>, 625 So. 2d at 1016.

WDI does not provide any case law supporting the argument

that the Defendants owed a duty to provide correct information to

the public at large.   However, WDI also offers a cursory

allegation that statements were made directly to WDI. "Where

there is privity of contract . . . courts have found a duty owed

to the tort victim under factual scenarios of both non-disclosure

and misinformation." <u>Barrie</u>, 625 So. 2d at 1015.   At least in the

past, if not presently, the parties had a contractual

relationship. Viewing the facts in favor of WDI, the Court cannot

conclude that Defendants, in light of their ongoing contractual

relationship and/or negotiations, owed no duty to WDI to provide

correct information regarding their claims to the "WHO DAT"

trademark.

In addition, WDI sufficiently pleads a breach of that duty.

Although WDI does not specify precisely which of the Defendants'

statements it is referring to under this Count, it incorporates

by reference several statements made to it over the years.   The

Court will assume for purposes of this Motion that WDI might be

able to prove that one or more of those statements provided

17

incorrect information despite a duty to provide correct information.  WDI would have been reasonable to rely upon the Defendants' promises not to challenge or dispute WDI's interest in the "WHO DAT" mark, especially in light of the cover letter addressed to the Louisiana Secretary of State.  Assuming, *arguendo*, that WDI succeeds with its *contra non valentem* argument, this prong will be satisfied.

However, WDI has not adequately plead resulting damages. The only damages it claims to have suffered – lost commercial opportunities with companies like Coca-Cola –resulted from the confusion associated with the statements made by the Defendants *to the public.*  At most, any statements made directly to WDI resulted in a mere false sense of security.  Yet WDI claims it remained vigilant in protecting its interests on the federal and state levels. It does not appear that WDI suffered any additional damages as a result of the statements made directly to it. Instead, those damages are more appropriately sought under trademark infringement or breach of contract theories. Accordingly, WDI has not adequately pled a claim for negligent misrepresentation. Defendants' Motion should be **GRANTED.**

**Fraudulent Misrepresentation (Count 13)**

WDI bases its fraudulent misrepresentation claim on the copy of a cover letter it received from the Saints, which was addressed to the Secretary of State of Louisiana and indicated

that the Saints instructed the Secretary to transfer its "WHO DAT" registration to WDI.  That letter was dated September 2, 1988 (Rec. Doc. 41, ¶ 57). WDI alleges that the Saints fraudulently misrepresented an intention to transfer its registered interest in "WHO DAT" in September 1988.  WDI claims the misrepresentation was intentional and calculated to deceive WDI.  WDI insists its reliance was justified because the Saints never objected to WDI's continued commercial use of the mark. Further, WDI implies that, because the Assignment was immediately valid and binding as between the parties, the Defendants had no incentive *not* to comply with its promise to transfer the registration.  Finally, it alleges lost commercial opportunities with companies such as Coca-Cola as a result of the fraud.

Defendants argue that the fraudulent misrepresentation claims are time-barred under Louisiana's one-year prescriptive period for delictual claims, per La Civ. Code art. 3492. Defendants insist that WDI's fraudulent misrepresentation claim, if it ever had one, prescribed in 1989, one year after WDI received the cover letter. On the other hand, WDI argues that the very fraud it seeks relief for is the same fraud which prevented it from discovering a fraud had been perpetuated. WDI seeks to invoke *contra non valentem* because it did not know the Saints had not followed through as agreed, so it could not have discovered the fraud. Defendants dispute the applicability of *contra non*

19

*valentem*, arguing WDI had at least "constructive knowledge of the fraud at least by March 1998." Through reasonable diligence, such as checking the Secretary of State's records, WDI would have learned the actual state of the registrations.

In response, WDI insists the doctrine should apply. First, WDI received assurances from the Saints that it would not challenge WDI's ownership and interest in the "WHO DAT" trademark. Further, WDI continued to use "WHO DAT" commercially, without objection from the Saints. Thus, WDI contends it was not on notice that the Defendants continued to claim any interest in the mark and had no obligation to check the state records.

Additionally, Defendants seek dismissal of Plaintiff's fraudulent misrepresentation claim based on insufficiency of Plaintiff's pleading, arguing that WDI has not pled the elements of fraud. First, if the fraud alleged is based on silence or inaction [such as the failure to notify the Secretary of State of the Assignment], WDI must also demonstrate a duty to disclose correct information. Second, WDI did not *actually* rely on the misrepresentation. Such a finding would require that WDI was induced into taking or not taking some action based on the misrepresentation. Third, any actual reliance by WDI was not *justifiable* because the truth could have been easily ascertained. Finally, the Defendants argue the requisite proximate causation is not demonstrated on the face of WDI's pleadings.

20

To succeed in its claim for fraudulent misrepresentation WDI must show: (1) a misrepresentation of material fact; (2) made with intent to deceive; and (3) justifiable reliance thereon with resultant injury.   Newport Ltd. v. Sears, Roebuck & Co., 6 F.3d 1058, 1069 (5th Cir. 1993). There is no question that WDI has sufficiently pled that the Defendants made a misrepresentation of material fact by way of providing WDI with a copy of the cover letter dated September 2, 1988, or that the representation was intended to deceive.  What is less clear is whether WDI justifiably relied on that representation, and to what extent. Making every inference in favor of WDI, the Court assumes it was reasonable to rely on the cover letter and WDI was therefore not unreasonable in failing to investigate the Secretary's records with respect to the NLF Parties' claims to the "WHO DAT" mark.

Finally, WDI must allege that is suffered injury as a result of that reliance.  For the same reason that WDI's negligent misrepresentation claim fails as a matter of law – the only injury it claims to have suffered resulted from statements made to the *public* –the fraudulent misrepresentation claim must fail also. WDI claims the misstatement was wilful and wanton, and seeks punitive damages.  But there can be no punitive damages where there are no actual damages. Again, it seems that the type of injury alleged by WDI was not intended to be redressed by tortious misrepresentation claims, although other theories of

21

recovery may be sustained. The Court concludes that WDI has not stated a claim for fraudulent misrepresentation. Defendants' Motion should be **GRANTED.**

For the foregoing reasons, Defendants' **Motion to Dismiss (Rec. Doc. 27)** is **GRANTED** on the issues of negligent and fraudulent misrepresentation and federal disparagement. The Motion is **DENIED** on the issues of breach of contract and the application of the Louisiana cancellation statute.

New Orleans, Louisiana this 17th day of November, 2010.

CARL J. BARBIER

UNITED STATES DISTRICT JUDGE