UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WHO DAT YAT LLC                          CIVIL ACTION

VERSUS                                   NO: 10-1333
                                         c/w 10-2296

WHO DAT? INC.                            SECTION: J (4)


<u>ORDER AND REASONS</u>

Before the Court are Who Dat, Inc. (WDI)'s Motion to Dismiss Storyville Apparel, LLC ("Storyville")'s Counterclaim (Rec. Doc. 62) and Storyville's Opposition (Rec. Doc. 71); WDI's Motion to Dismiss Fleurty Girl, LLC ("Fleurty Girl")'s Counterclaim (Rec. Doc. 66) and Fleurty Girl's Opposition (Rec. Doc. 73), WDI's Motion to Dismiss Who Dat Yat Chat, LLC ("WDYC")'s Claims (Rec. Doc. 68) and WDYC's Opposition (Rec. Doc. 72). Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that WDI's **Motions to Dismiss Storyville's and Fleurty Girl's Counterclaims (Rec. Docs. 62 and 66)** are **DENIED.** WDI's **Motion to Dismiss WDYC's claims (Rec. Doc. 68)** is **GRANTED in part and DENIED in part.**

**FACTUAL AND PROCEDURAL BACKGROUND:**

On March 4, 2010, WDI filed a complaint for damages, as well as declaratory and injunctive relief, for misappropriation of the WHO DAT mark  in the Middle District of Louisiana. <u>Who Dat?, Inc.</u>

1

<u>v. NFL Properties, LLC, et. al.</u>, 3:10-CV-154 (M.D. La.) ("NFL Lawsuit"). NFL Properties, LLC, New Orleans Louisiana Saints, L.L.C., Louisiana Secretary of State, and the State of Louisiana were named Defendants.

On March 23, 2010, WDYC filed a declaratory action against WDI in Civil District Court, Parish of Orleans, seeking a declaration that it be allowed to operate under its state registered name without facing any risk of a trademark violation ("Yat Chat Lawsuit"). WDYC alleged in its complaint that in March 2007, WDYC received a certificate of good standing from the Secretary of State using the name "Who Dat Yat Chat, LLC." WDYC plans to use this name to open a coffee shop in Violet, Louisiana in 2011.  On or about March 11, 2010, WDYC received a cease and desist letter from WDI, advising WDYC that WDI owned the federal trademark to WHO DAT and all of its derivatives.

On May 4, 2010, WDI removed the Yat Chat Lawsuit from state court to the U.S. District Court for the Eastern District of Louisiana. On May 25, 2010, WDI filed a motion to transfer the case to the Middle District and argued that the case should properly be in the Middle District due to: (1) first to file rule (the NFL Lawsuit was already pending) and (2) convenience of the parties. This Court found that there were no compelling circumstances to warrant a departure from the "first to file" doctrine and on June 2, 2010, ordered that the Yat Chat Lawsuit

2

be transferred to the Middle District.

On June 8, 2010, the United States District Court for the Middle District of Louisiana determined that the NFL Lawsuit had "minimal connection with this district" and ordered all parties to show cause in writing why this action should not be transferred back to the Eastern District pursuant to 28 U.S.C. § 1404(a). The Yat Chat lawsuit was then transferred to the Eastern District. By Order dated September 23, 2010 this Court again noted that the Yat Chat Lawsuit is "related to" the NFL Lawsuit and the two lawsuits were consolidated.

WDI's Third Amended Complaint (Rec. Doc. 41) added several other defendants: Liquid Ventures Incorporated d/b/a FanTheFire.com ("FanTheFire"), Logo Express Marketing, Inc. ("Logo Express"), Monogram Express d/b/a sewnola.com ("Monogram Express"), Storyville, and Fleurty Girl. According to its Complaint, WDI is a company owned by two brothers (Sal and Steve Monistere) who claim to be the founding members of the WHO DAT NATION. WDI asserts that it developed and nurtured the phrase WHO DAT for more than twenty-five years and believes it was uniquely positioned to reap substantial financial rewards in connection with the 2009-2010 National Football League season. WDI claims that it derives income in the form of royalty payments and licensing fees from its licensees from the sale of merchandise bearing the WHO DAT trademarks. The Complaint avers that, as the

3

rightful owner of the WHO DAT trademark, WDI is entitled to declaratory relief, cancellation of the trademarks obtained by the Saints on or after February 16, 2007, permanent injunction, and damages for fraudulent registration, breach of contract, deceptive advertising under Louisiana law, common law unfair competition, common law trademark infringement, state statutory trademark infringement, federal unfair competition, federal dilution, federal commercial and product disparagement, negligence, and fraud.

Storyville's Counterclaim (Rec. Doc. 49) alleges unfair competition or trade practice by WDI under the Lanham Act and the Louisiana Unfair Trade Practices Act (LUTPA) and seeks an injunction against any continued assertion and cancellation of any trademark that WDI may have in "WHO DAT?," "TWO DAT!," or "2 D@!"

Fleurty Girl also counterclaimed (Rec. Doc. 51), seeking damages for WDI's wrongful removal of Fleurty Girl's Facebook Page, the majority of which did not contain a reference to WHO DAT merchandise. According to Fleurty Girl, WDI's actions constitute an unfair trade practice under Louisiana law. Fleurty Girl further seeks costs, damages for lost profits and business disruption, and attorneys fees under 17 U.S.C. §512(f).

**PARTIES ARGUMENTS:**

WDI now seeks dismissal of WDYC's claims and Storyville's

4

and Fleurty Girl's counterclaims. According to WDI, both
Storyville and WDYC lack standing under the Lanham Act and LUTPA.
Specifically, WDI argues that Storyville and WDYC cannot
establish constitutional standing, having failed to allege that
they have suffered any injury as a result of any actions
attributable to WDI, and that any such injury could be redressed
by a decision in their favor. Furthermore, WDI contends that
under the Lanham Act, a plaintiff must demonstrate prudential
standing as well. In determining whether a plaintiff has
prudential standing under the Lanham Act, courts consider the
following factors: (1) the nature of the plaintiff's alleged
injury; (2) the directness or indirectness of the asserted
injury; (3) the proximity or remoteness of the party to the
alleged injurious conduct; (4) the speculativeness of the damages
claim; and (5) the risk duplicative damages or complexity in
apportioning damages. WDI argues that Storyville and WDYC have
not alleged sufficient facts to demonstrate the nature of their
alleged injury. Storyville and WDYC do not claim any interest in
a trademark protected under the Lanham Act or the LUTPA.
Furthermore, Storyville and WDYC do not allege any conduct on the
part of WDI that would be actionable under either statute for
unfair or misleading use of a Storyville or a WDYC trademark.
Hence, according to WDI, neither Storyville nor WDYC can
establish that it has prudential standing to assert its claim.

WDI also argues that both Fleurty Girl's and WDYC's claims under the LUTPA are legally insufficient. Fleurty Girl cannot meet the LUTPA requirements in that it cannot show that it is either a consumer or business competitor of WDI, nor could it establish that it otherwise has standing to maintain a private right of action against WDI for LUTPA violations. Additionally, WDI contends that Fleurty Girl has failed to plead facts enough to satisfy every element of a LUTPA cause of action. The elements of a cause of action under the LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss. WDI asserts the type of injury claimed to have been suffered by Fleurty Girl (i.e. damages for WDI's unlawful claim of ownership in the phrase WHO DAT) is not what was contemplated by the LUTPA. Further, Fleurty Girl does not plead facts demonstrating any plausible link between WDI's alleged unfair or deceptive trade practice and the damages allegedly sustained by Fleurty Girl. Similarly, WDI argues that WDYC fails to allege facts that establish that WDI's conduct was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. In addition, WDI contends that WDYC does not allege facts to support any element of fraud, misrepresen-tation, deception, or any other unethical conduct on the part of

WDI, instead making general allegations that WDI actions were fraudulent or willful and with knowledge of WDI having no legitimate rights in any trademark. Further, WDI argues that WDYC fails to show causation required under the LUTPA, nor does it establish any conduct on the part of WDI that would be actionable under the LUTPA for unfair or deceptive use of a WDYC.

Storyville's response emphasizes that standing under the LUTPA is available to any person who suffers an ascertainable loss as a result of another person's use of unfair methods of competition. Further, federal courts have treated the requirements of the LUTPA as mirroring the Lanham Act, which avoids the federal courts having to apply two different analyses to Lanham-Act and LUTPA claims. Storyville argues that false advertising is a form of unfair competition. WDI and Storyville are business competitors both operating stores and making and selling t-shirts, including WHO DAT t-shirts. Storyville claims to have suffered a competitive injury when Storyville's customers decided not to purchase the t-shirts due to WDI's misrepresentations. Additionally, Storyville argues that neither the Lanham Act nor the LUTPA make trademark involvement a prerequisite, merely providing protection against unfair competition. Even if Storyville is not entitled to recover money damages, it has standing to obtain injunctive relief. Finally, Storyville argues that it has standing to sue under both the

Lanham Act and under the LUTPA. The purpose of the Lanham Act is to protect business competitors from competitive injury, thus giving Storyville standing to sue. Standing under the Lanham Act does not require a showing of actual, specific damages; the likelihood of injury is often sufficient. Storyville has prudential standing as a business competitor directly competitively injured by WDI, where Storyville is asserting its own rights and interests, which are free competition, unrestrained trade, and the right to sell WHO DAT t-shirts. Additionally, under the LUTPA, Storyville has standing as a business competitor directly injured by WDI, with its ascertainable loss resulting from WDI's unfair method of competition. Storyville also alleges that it has standing for claims under section 38 of the Lanham Act, which imposes liability for any person who shall procure registration by false or fraudulent means.

Similarly, WDYC responds that WDYC and WDI are competitors in the business of selling goods. As such, WDYC's standing to bring this claim under the Lanham Act is established by (1) the business-competitor relationship with WDI, (2) the "cease and desist" notices, and (3) claims by WDI against WDYC. Like Storyville, WDYC asserts that the injury requirement under section 43(a) can be satisfied even though a party fails to establish a specific amount of actual loss. Just the likelihood

8

of injury is often sufficient, and is often assumed to exist when the other elements are present. Under LUTPA, standing is available to any person who suffers an ascertainable loss as a result of another person's use of unfair methods of competition. WDYC claims that WDI disparaged WDYC's business and seeks to recover damages, resulting from not being able to open its coffee shop under the name of "Who Dat Yat Chat." Such recovery is due WDYC because of WDI's false assertion of a trademark. Moreover, WDYC represents that false advertising is a type of unfair competition; it claims to have been damaged when potential customers are influenced by the untrue statement and refrain from purchasing the injured competitor's goods, causing a competitive injury. WDYC further contends that it has standing under article 2315.

Fleurty Girl's response underscores that WDI's misrepresentations to Facebook caused it to remove Fleurty Girl's page for two weeks, which resulted in significant disruption of Fleurty Girls's promotional efforts, as well as a loss of sales. Fleurty Girl claims to have standing under the LUTPA as WDI's business competitor in selling t-shirts. Further, Fleurty Girl argues that its counterclaim contains clear allegations that WDI misled Facebook into believing that it had unchallenged rights to the phrase WHO DAT. Finally, Fleurty Girl asserts that it has incurred damages as a result of WDI's actions, even if such

damages are not fully defined yet.

WDI further contends that even if Fleurty Girl and WDYC have sufficiently alleged facts establishing every element of their claim against WDI under the LUTPA and have standing to assert such a claim, Fleurty Girl and WDYC have not alleged facts supporting an award of treble damages under the LUTPA. The LUTPA provides that a plaintiff may be entitled to three times actual damages if a defendant knowingly used an unfair or deceptive method, act, or practice, after being put on notice by the attorney general. Fleurty Girl's and WDYC's general allegations that WDI made a knowingly material misrepresentation is a conclusory statement. Furthermore, Fleurty Girl and WDYC do not allege any facts demonstrating that WDI was put on notice by the attorney general regarding WDI's alleged unfair or deceptive acts. WDI also adds that neither Fleurty Girl nor WDYC has plead enough facts to establish that it is entitled to relief under article 2315 of the Louisiana Civil Code.

WDYC reiterates that it is entitled to recover attorneys' fees under the Lanham Act and treble damages under the LUTPA because of WDI's fraudulent and willful acts. Fleurty Girl's response memorandum states that Fleurty Girl has not pled entitlement to treble damages under LUTPA and does not plan to do so. Fleurty Girl argues, however, that it has properly pled a claim under Louisiana Civil Code article 2315 because WDI's

causing Facebook to take down Fleurty Girl's page caused Fleurty
Girl to sustain financial damage to her business.

WDI also argues that Fleurty Girl has not pled enough facts
to support a claim under 17 U.S.C. § 512(f), which provides that
"any person who knowingly materially misrepresents . . . that
material or activity is infringing" shall be liable for any
damages incurred by the alleged infringer "who is injured by such
representation, as the result of the service provider relying
upon such misrepresentation in removing or disabling access to
the material or activity claimed to be infringing." According to
WDI, Fleurty Girl claims that WDI directed Facebook to remove
Fleurty Girl's Facebook page, and that WDI's intentional actions
caused Fleurty Girl's Facebook page to be taken down. Somewhat
contradictorily, WDI argues that Fleurty Girl does not allege
anywhere in the complaint that Facebook actually removed Fleurty
Girl's Facebook page or disabled access to it. Morever, Fleurty
Girl does not allege facts establishing that Facebook actually
relied upon any alleged misrepresentations made by WDI in
removing or disabling access to Fleurty Girl's Facebook page.
Further, Fleurty Girl's statement that WDI made knowingly
material misrepresentations that Fleurty Girl's Facebook page
contained infringing material is nothing more than a legal
conclusion.

Fleurty Girl responds that when Facebook quickly took down

11

Fleurty Girl's page, Facebook was trying to avail itself of Section 512's safe harbor, which was passed to relieve from liability those website owners who respond quickly and take down material that is alleged to be infringing, once they receive written notice of such infringement. According to Fleurty Girl, section 512(f) provides a claim for wrongdoing of the type alleged in Fleurty Girl's counterclaim.

**DISCUSSION:**

**Legal Standard**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949. "A court must

12

accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc</u>., 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 129 S.Ct. at 1949-50.

**Standing Under the Lanham Act**

Section 43(a) of the Lanham Act, dealing with false designations of origin, false descriptions, and dilution, provides as follows:

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion,

13

> misrepresents the nature, characteristics, qualities,
> or geographic origin of his or her or another person's
> goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who
> believes that he or she is or is likely to be damaged
> by such act.

15 U.S.C. § 1125(a). Plaintiffs bringing suit under this provision must meet both constitutional and prudential standing requirement. To meet the constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). WDI briefly argues that the claimants do not have constitutional standing for failure to allege that they suffered any injury as a result of any actions attributable to WDI, much less that any such injury will be redressed by a decision in their favor. However, all three parties aver that they sustained economic loss due to WDI's alleged misrepresentations, which can be redressed through an award of damages and further prevented through imposition of an injunction, should the claimants prevail on the merits. Thus, the claimants have met their burden in demonstrating that they have adequate constitutional standing.

Prudential standing is determined through the application of

14

a multi-factor test:

> (1) the nature of the plaintiff's alleged injury: Is
> the injury "of a type that Congress sought to redress
> in providing a private remedy for violations of the
> antitrust laws"?; (2) the directness or indirectness of
> the asserted injury; (3) the proximity or remoteness of
> the party to the alleged injurious conduct; (4) the
> speculativeness of the damages claim; and (5) the risk
> of duplicative damages or complexity in apportioning
> damages.

Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 563 (5th
Cir. 2001).

WDI takes issue with the application of the first factor of
the test, arguing that Storyville and WDYC have not alleged
enough facts under that particular factor. WDI contends that the
Storyville and WDYC cannot claim any interest in a protected
trademark, and thus, no conduct on the part of WDI would be
actionable under the Lanham Act for unfair or misleading use of a
Storyville or a WDYC trademark. But such a narrow reading of
section 1125(a) has been rejected by courts. The first factor
focuses on the purpose behind the Lanham Act—"to provide
protection against unfair and misleading use of another's
trademark" and unfair competition. Procter & Gamble, 242 F.3d at
563 and n.52. When reviewing the language of 15 U.S.C. § 1125(a),

the United States Supreme Court clarified that this section is "one of the few provisions that goes beyond trademark protection," providing "a remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.'" Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003) (citation omitted). Storyville's and WDYC's claims contain sufficient factual allegations to make relief under the Lanham Act plausible. They claim to have suffered economic losses due to WDI's allegedly false assertions regarding the WHO DAT trademark. Thus, the nature of the injury alleged in the claims is within the scope of the Lanham Act, which makes Rule 12(b)(6) dismissal inappropriate.

**Standing Under the Louisiana Unfair Trade Practices Act and Treble Damages**

Under La. R.S. § 51:1405, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Further, section 1409 provides for a private right of action for anyone suffering "any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405."

WDI argues that the claimants seeking relief under the LUTPA

lack standing because they are neither consumers nor business competitors. WDI also asserts that LUTPA claims against it should be dismissed because the claimants do not plead enough facts to meet the requirements under the statute.

However, all three parties claim to be business competitors of WDI in that they sell WHO DAT goods. Further, it is plausible from the face of their complaints that they may prevail under the LUTPA because each one alleges that it sustained ascertainable loss as a result of WDI's alleged unfair or deceptive trade methods. Such pleadings do not warrant dismissal under Rule 12(b)(6).

As for treble damages under the LUTPA, a court can award those upon conclusion that the unfair or deceptive method, act, or practice was knowingly used, after the perpetrator was put on notice by the attorney general. La. R.S. § 51:1405. WDYC does not allege any facts demonstrating that WDI was put on notice by the attorney general regarding WDI's alleged unfair or deceptive acts. Hence, WDYC's demand for treble damages must be dismissed.

**Claims Under Louisiana Civil Code Article 2315**

WDI seeks dismissal of the claims under article 2315 because the claimants have failed to plead sufficient facts to establish that a right to relief is plausible. On this motion to dismiss, the Court assumes that all facts are true and draws all reasonable inferences in favor of the claimant. <u>Lormand</u>, 565

17

F.3d at 232-33. The claims contain enough facts to make it plausible that the relief requested could be granted. Each party asserts that it sustained economic loss caused by WDI's conduct in representing that it is the owner of the WHO DAT trademark. Thus, it would be improper to dismiss article 2315 claims on this 12(b)(6) motion.

**Claims under 17 U.S.C. § 512(f)**

17 U.S.C. § 512(f), which provides that "any person who knowingly materially misrepresents … that material or activity is infringing" shall be liable for any damages incurred by the alleged infringer "who is injured by such representation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." WDI argues that Fleurty Girl's claim for the removal of its Facebook page fails because Fleurty Girl does not allege facts establishing that Facebook actually relied upon any alleged misrepresentations made by WDI in removing or disabling access to Fleurty Girl's Facebook page. Further, WDI contends that Fleurty Girl fails to identify specific statements WDI made to Facebook regarding infringing material or activity on Fleurty Girl's Facebook page. However, on this motion to dismiss the Court reviews the complaint, assuming all the well-pleaded facts to be true. Fleurty Girl claims that Facebook disabled Fleurty Girl's page as a result of WDI's

18

alleged misrepresentations. Under these facts, it is plausible that Fleury Girl could be entitled to relief if every element of a section 512(f) is later proven.

Accordingly, **IT IS ORDERED** that WDI's **Motions to Dismiss (Rec. Docs. 62, 66, and 68)** are **DENIED,** with the exception of WDYC's claim for treble damages under the LUTPA, which is hereby **DISMISSED.**

New Orleans, Louisiana this 4th day of January, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE