UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WHO DAT YAT CHAT, LLC | CIVIL ACTION |
| VERSUS | NO: 10-1333<br>c/w 10-2296 |
| WHO DAT, INC. | SECTION: "J"(4) |

**ORDER AND REASONS**

Before the Court are **(1)** Storyville Apparel LLC
("Storyville")'s Motion to Strike and for a More Definite
Statement Under Rule 12 (Rec. Doc. 304), Who Dat, Inc. ("WDI")'s
opposition to same (Rec. Doc. 317), and Storyville's reply (Rec.
Doc. 327); **(2)** Fleurty Girl, LLC ("Fleurty Girl")'s Motion to
Dismiss Counts 1 and 2 of Who Dat?, Inc.'s Fourth Amended
Complaint (Rec. Doc. 309) and WDI's opposition to same (Rec. Doc.
323); and **(3)** WDI's Motion for Partial Summary Judgment
Dismissing Affirmative Defenses of Functionality and Abandonment
(Rec. Doc. 312), oppositions filed by Monogram Express (Rec. Doc.
316), Storyville (Rec. Doc. 318), Fleurty Girl (Rec. Doc. 320),
and Who Dat Yat Chat, LLC ("WDYC") (Rec. Doc. 315), replies by
WDI (Rec. Docs. 339, 340, & 341), and a sur-reply by Fleurty Girl
(Rec. Doc. 345). Having considered the motions, the legal
memoranda, the record, and the applicable law, the Court is
prepared to rule on the motions.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Court has previously summarized in detail the facts and procedural history pertaining to this civil action involving alleged trademark rights in the phrase "Who Dat" in connection with certain goods and services, chiefly, restaurant services and apparel.[1] This litigation includes two consolidated cases. The first is a declaratory judgment action filed by WDYC in 2010. The second is the lawsuit filed by WDI, who alleges various trademark-related claims with respect to the phrase "Who Dat." The Court has previously had occasion to rule on a number of dispositive motions in this case: motions to remand, to transfer, to dismiss, and for summary judgment. In its most recent ruling on the several defendants' motions for summary judgment, the Court held and/or otherwise found as follows:

> The Court does not decide that WDI has a protectable trademark. It only decides that the movants have not carried their summary judgment burden of demonstrating the absence of a genuine issue of any material fact regarding whether or not WDI has a protectable mark or marks in the phrase "Who Dat."[2]
> * * *
> Pretermitting the issue of intent, the Court finds that there is sufficient evidence of use for WDI to survive summary judgment on the movants' abandonment defense.[3]
> * * *

---

[1] See Who Dat Yat Chat, LLC v. Who Dat, Inc., No. 10-1333, 2012 WL 1118602, at *1-3 (E.D. La. Apr. 3, 2012); Rec. Doc. 262, at 1-7 (Court's ruling on the defendants' motions for summary judgment).

[2] Who Dat Yat Chat, LLC, 2012 WL 1118602, at *10; Rec. Doc. 262, at 24.

[3] Who Dat Yat Chat, LLC, 2012 WL 1118602, at *11; Rec. Doc. 262, at 28 (footnote omitted).

The Fifth Circuit's decision in <u>Smack Apparel</u> leaves no room for this Court to countenance Storyville's functionality argument. . . . [T]his court is bound by precedent suggesting that a consumer's desire to express his identity with a mark does not make it functional. "Who Dat" does not make a t-shirt work better. Therefore, it is not functional.[4]
* * *
[With respect to state law trademark infringement claims,] [t]he movants do not carry their summary judgment burden, largely for the reasons previously discussed in the context of the federal infringement claims.[5]
* * *
The record is not sufficiently developed for the Court to rule as a matter of law on the federal dilution claim.[6]
* * *
[Several claims conceded by WDI must be dismissed, and] WDI is ordered to amend its complaint to remove allegations regarding claims against parties that have been dismissed and to clarify the causes of action it presses forward.[7]

Since the ruling on the defendants' motions for summary judgment, the Court conducted a pretrial conference. During the pretrial conference, the Court ordered the parties to pare down the exhibit and witness lists and generally attempt to reduce the volume of evidence to be submitted at trial.[8] Thereafter, the

---

[4] <u>Who Dat Yat Chat, LLC</u>, 2012 WL 1118602, at *15; Rec. Doc. 262, at 37-38.

[5] <u>Who Dat Yat Chat, LLC</u>, 2012 WL 1118602, at *15; Rec. Doc. 262, at 38-39.

[6] <u>Who Dat Yat Chat, LLC</u>, 2012 WL 1118602, at *16; Rec. Doc. 262, at 42.

[7] <u>Who Dat Yat Chat, LLC</u>, 2012 WL 1118602, at *17; Rec. Doc. 262, at 42-43.

[8] Rec. Doc. 266, at 5 (pretrial conference minute entry).

Court continued the jury trial to October 29, 2012.[9]  The Court instructed WDI to submit a revised, restated complaint.[10]  The parties submitted amended exhibit and witness lists.  The Court granted defendant Monogram Express's motion to set aside the default.[11]  With leave of Court, WDI filed its Fourth Amended Complaint on April 26, 2012.[12]  Subsequently, the parties have filed several motions that are the subject of the instant order: a Motion to Strike, Motion to Dismiss, and Motion for Partial Summary Judgment.[13]

## THE PARTIES' ARGUMENTS

**A.  Motion to Strike**

Storyville moves to strike, and in the alternative, for a more definite statement.  It argues that WDI's Fourth Amended Complaint fails to comply with this Court's order mandating amendment of the complaint.  Specifically, Storyville argues, first, that the references to the Saints and the NFL and any agreements with them are immaterial and should either be stricken or clarified with a more definite statement of what Saints-derived rights are asserted against Storyville.  Second,

---

[9] Rec. Doc. 279, at 1; Rec. Doc. 296, at 2.

[10] Rec. Doc. 279, at 1.

[11] Rec. Doc. 297.

[12] See Rec. Docs. 301, 302.

[13] Rec. Docs. 304, 309, & 312.

Storyville argues that the allegations concerning its infringing
or diluting activities and the allegations concerning
disparagement are too vague for it to form a reasonable response,
and thus the complaint should be clarified with a more definite
statement.  Third, Storyville argues that the alleged trademark
owned by WDI is vaguely presented as applying to almost
everything but apparel, and thus should also be clarified with a
more definite statement.

WDI's response initially states that most of the portions of
the complaint objected to by Storyville are identical to those
that were in WDI's previous, third amended complaint.  WDI also
avers that because Storyville refused to agree to WDI's offer to
amend the complaint without court intervention, Storyville
brought the motion to strike in bad faith for purposes of
harassment, delay, or vexation.  WDI addresses Storyville's
arguments with respect to individual paragraphs of the Fourth
Amended Complaint.  For example, WDI argues:  Paragraphs 7 and 42
adequately describe Storyville's allegedly infringing conduct;
Paragraphs 14, 30-33, and 37 make proper references to the
Saints; Paragraph 23 clearly refers not to the WDI-Saints
settlement agreement, but a 1988 licensing agreement; and
Paragraph 45 is the subject of WDI's voluntary offer to
Storyville to delete the paragraph, which offer Storyville
rejected.  In conclusion, WDI argues that the specific factual

matter that Storyville requests WDI include in the complaint is not mandated by Rule 8.

In reply, Storyville reiterates its arguments and makes several other points. With respect to what it views as WDI's effort to get Storyville to withdraw its motion to strike, Storyville avers that its response was that as long as WDI was trying to assert the Saints' rights re-labeled as WDI's rights, the complaint would still be objectionable. It argues that the Fourth Amended Complaint does not differentiate which actions are alleged to be attributable to which defendants. Storyville further states that it did not file its motion for purposes of delay.

## B. Motion to Dismiss

Fleurty Girl moves to dismiss Counts 1 and 2 of the Fourth Amended Complaint. With respect to Count 1, Fleurty Girl argues that the request for a permanent injunction does not allege a legal cause of action because there is no injunctive cause of action under federal law. It states that WDI would not be prejudiced by the dismissal of Count 1 because WDI prays for injunctive relief in other counts of the complaint. In the alternative, Fleurty Girl moves for Count 1 to be stricken as redundant. With respect to Count 2, Fleurty Girl argues that its allegation of deceptive advertising under state law fails to state a claim because it does not specify which Louisiana law

forms the basis for the claim, the Louisiana false advertising statute does not provide a private right of action, and WDI fails to make any allegations of specific statements or representations that were made by Fleurty Girl. Fleurty Girl states that WDI would suffer no prejudice from the dismissal of Count 2 because other counts ask for relief that is coterminous with the relief requested in Count 2.

WDI's response initially states that the objected-to counts in the Fourth Amended Complaint are substantively identical to counts that were in the third amended complaint. WDI also states that Fleurty Girl refused to agree to WDI's offer to amend the complaint without court intervention. With respect to the request for a permanent injunction in Count 1, WDI argues that it properly requested injunctive relief. It states that while it previously attempted to agree with Fleurty Girl to amend its complaint to remove Count 1, the Federal Rules do not require that the count be stricken. With respect to Count 2, WDI argues that it has pled sufficient facts in support of its deceptive advertising claim. It argues that Fleurty Girl's willful infringement, combined with Fleurty Girl's repeated encouragement to third parties to sell infringing merchandise, constitutes deceptive advertising. WDI also argues that the Federal Rules do not require it to plead the specific statutory basis for its claim. It alleges that it has a cause of action under the

Louisiana Unfair Trade Practices Act ("LUTPA"). Finally, WDI states that if Count 2 fails to meet the mandatory pleading standard, the appropriate remedy is for leave to be granted for WDI to state more specific facts.

## C. Motion for Partial Summary Judgment

WDI moves for dismissal of the defendants' affirmative defenses of functionality and abandonment. With respect to abandonment, WDI avers that the undisputed facts, based upon the affidavits, declarations, and exhibits submitted with its motion, demonstrate continuous use of its marks from 1983 until the present. WDI submits with its motion several affidavits as well as licensing agreements. It argues that there is no genuine dispute that there has been no cessation of use of its Who Dat marks in commerce from 1983 until the present, but even if there was a cessation of use, there is no evidence that WDI intended not to resume use. Specifically, as evidence of its intent to continue use, WDI avers that it has continuously taken steps to register its trademarks, has policed unauthorized use of the marks, and has expanded its use of the marks to new goods and services. Accordingly, it submits that no reasonable jury could determine that it intended to abandon its alleged Who Dat trademarks. With respect to the functionality defense, WDI argues that while the Court's prior order denied summary judgment to the defendants on the issue, WDI now affirmatively seeks

dismissal of the functionality defense.

Storyville argues that both affirmative defenses survive summary judgment. Concerning abandonment, Storyville argues that it was a triable issue when the Court denied the defendants' motions for summary judgment, and it is still a triable issue now. Regarding functionality, Storyville argues for the modification, reversal, or disregard of Fifth Circuit case law on the issue of categorical exclusion of expressions of support and identity from the functionality defense. Storyville then provides a detailed brief of legal authorities it cites for the propositions that this case is really about "expressive functionality" and that the Fifth Circuit case law on this issue should be changed based upon the weight of precedent in other circuits, the purposes of trademark law, the history of its development, and proper interpretation of trademark law.

WDYC and Monogram Express have filed virtually identical opposition memoranda.[14] WDYC and Monogram Express provide a statement of principles of trademark law and assert that whether a functionality defense is applicable to this case is a question of fact. Their memoranda proceed to list 43 "other facts that are unrefuted [that] should be recognized."[15] Finally, they argue

---

[14] In fact, they appear to be the same memorandum, with a couple of slight differences.

[15] Rec. Doc. 315, at 9; Rec. Doc. 316, at 9.

that because Steve Monistere's declaration that they characterize as self-serving does not provide details concerning receipts, annual revenue, or annual merchandise purchases, it does not entitle WDI to summary judgment dismissing the abandonment defense. They aver that they have requested dates from WDI's counsel for taking Monistere's deposition but have been unable to pin down a date.

Fleurty Girl argues that WDI's motion for partial summary judgment should be denied because it has not demonstrated continuous use of the marks since 1983, the abandonment issue is heavily intertwined with whether WDI has a protectable mark, and the abandonment issue is complex and important. Fleurty Girl then proceeds to attack WDI's evidence in several particulars. First, it argues that WDI's affidavits are not specific enough, in that the allegations of use therein broadly refer to "merchandise," rather than specific types of goods or services. Second, Fleurty Girl states that there is at least one three-year gap in which WDI failed to use the marks in commerce, which makes a *prima facie* showing of abandonment. Third, it argues that there is a factual dispute regarding whether WDI abandoned its rights by failing to oppose a trademark registration based on use that began in 2004. Fourth, it argues that WDI fails to provide facts showing the use of WDI's marks related to jewelry or restaurants. Fifth, it argues that WDI's failure to present

evidence on its use of the marks for specific goods and services related to this case leads to the inference that the marks were not in continuous use. Sixth, it avers that WDI's affidavits are not supported by documentary evidence. Lastly, it argues in the alternative that the Court should exercise discretion to deny the motion.

WDI has filed reply memoranda to the defendants' opposition memoranda. Therein, WDI argues that Fifth Circuit precedent does not permit application of the functionality defense in this case. With respect to the defense of abandonment, WDI argues that the defendants have not come forward with evidence of their own and have thus failed to show a genuine issue of material fact. Replying to Fleurty Girl's memorandum, WDI states that Fleurty Girl's opposition memorandum does not present any evidence, and WDI points out that Fleurty Girl has not taken the deposition of the witnesses whose affidavits are at issue. WDI argues that Fleurty Girl should not be permitted to argue the semantics of the language in the affidavits. WDI also argues that it is unnecessary for it to demonstrate that its Who Dat-branded products are the same products offered by Fleurty Girl. It argues that even if WDI never offered jewelry products for sale, consumers shopping for jewelry may be confused by the sale of t-shirts bearing the Who Dat marks. In any case, WDI submits several new affidavits in conjunction with its reply memorandum

to Fleurty Girl's opposition, and WDI avers that the evidence establishes that it never ceased selling jewelry and related products since 1987.  Accordingly, it argues that its motion should be granted.

Fleurty Girl filed a sur-reply.  Therein, it addresses what it asserts are new arguments raised in and new evidence submitted with WDI's reply memorandum.  With respect to supplemental declarations submitted with WDI's opposition memorandum, Fleurty Girl asserts that the declarations do not provide evidence of sales or refer to documents evidencing sales and other business activities that span 30 years.  Fleurty Girl argues that the factual dispute concerning use over the past 30 years is highlighted by the fact that WDI has not submitted documents showing continuous commercial use.  It argues that it need not be faulted for not producing evidence of nonuse because it does not control the evidence related to WDI's or its licensees' sales and advertising.  Fleurty Girl asserts that WDI has not produced necessary commercial records for at least the time periods of 1985-1988 and 1993-2010.  Fleurty Girl argues that without any documentary evidence to indicate WDI's use, Fleurty Girl has no documents on which it could depose the declarants whose statements WDI uses to support its motion.  It avers that it still plans to depose these declarants prior to the discovery deadline and points out that WDI has not produced a summary of

sales and royalties.  Therefore, Fleurty Girl argues that it is
entitled to argue abandonment to the jury at trial.


**LEGAL STANDARD**

**A.  Motion to Strike and for a More Definite Statement**

Under Federal Rule of Civil Procedure 12(f), "[t]he court
may strike from a pleading an insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter." FED.
R. CIV. P. 12(f).  The decision to grant or deny a motion to
strike lies within the sound discretion of the trial court.
Tarver v. Foret, No. 95-1192, 1996 WL 3536, at *1 (E.D. La. Jan.
3, 1996). However, motions to strike under Rule 12(f) are
disfavored and "should be used sparingly by the courts" because
they are considered a "drastic remedy to be resorted to only when
required for the purposes of justice."  Pan-Am. Life Ins. Co. v.
Gill, No. 89-5371, 1990 WL 58133, at *2 (E.D. La. Apr. 27, 1990)
(internal quotations omitted).  Additionally, the moving party
must generally make a showing of prejudice before a motion to
strike is granted.  Id.

Federal Rule of Civil Procedure 12(e) permits a party to
move for a more definite statement when "a pleading to which a
responsive pleading is permitted is so vague or ambiguous that a
party cannot reasonably be required to frame a responsive
pleading." FED. R. CIV. P. 12(e).  A party, however, may not use

13

a Rule 12(e) motion as a substitute for discovery. <u>See</u> <u>Mitchell</u>
<u>v. E-Z Way Towers, Inc.</u>, 269 F.2d 126, 132 (5th Cir. 1959). As a
result of the liberal pleading standard set forth in Rule 8, Rule
12(e) motions are disfavored. <u>See</u> <u>id.</u> Rule 12(e) is ordinarily
restricted to situations where a pleading suffers from
"unintelligibility rather than want of detail." 2A Moore's Fed'l
Prac. ¶ 12.18[1], at 2389 (2d ed. 1985).

**B. Motion to Dismiss**

Under the Federal Rules of Civil Procedure, a complaint must
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The
complaint must "give the defendant fair notice of what the claim
is and the grounds upon which it rests." <u>Dura Pharm., Inc. v.</u>
<u>Broudo</u>, 544 U.S. 336, 346 (2005). The allegations "must be
simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff
must plead enough facts to "state a claim to relief that is
plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678
(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547
(2007)). A claim is facially plausible when the plaintiff pleads
facts that allow the court to "draw the reasonable inference that
the defendant is liable for the misconduct alleged." <u>Id.</u> A
court must accept all well-pleaded facts as true and must draw
all reasonable inferences in favor of the plaintiff. <u>Lormand v.</u>

<u>U.S. Unwired, Inc.</u>, 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 556 U.S. at 678.

## C. Motion for Partial Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." <u>Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.</u>, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. <u>Little</u>, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." <u>Delta</u>, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must

15

come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. <u>See</u> <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. <u>See</u> <u>id.</u> at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. <u>See, e.g.,</u> <u>id.</u> at 325; <u>Little</u>, 37 F.3d at 1075.


**DISCUSSION**

**A.  Motion to Strike**

Storyville moves to strike or, in the alternative, for a more definite statement. Storyville focuses upon language in the

16

Court's order and reasons regarding the prior motions for summary judgment: "WDI is ordered to amend its complaint to remove allegations regarding claims against parties that have been dismissed and to clarify the causes of action it presses forward." Who Dat Yat Chat, LLC, 2012 WL 1118602, at *17; Rec. Doc. 262, at 42-43. Storyville argues that because the Saints and the NFL have been dismissed, any allegations concerning these parties should be dismissed. Storyville also argues that the order that WDI "clarify the causes of action it presses forward" requires WDI to state more factual matter within the complaint than it has stated in the Fourth Amended Complaint.

Although the above-quoted order may be read broadly to require some of the relief Storyville seeks, this was not the Court's intent and is an improper construction of the Court's order. First, by ordering a clarification of causes of action that WDI may still press forward, the Court ordered WDI to eliminate the causes of action that clearly no longer apply. For example, a breach of contract claim based on a contract with parties who have been dismissed (e.g., the Saints) no longer had a proper place in the complaint. WDI properly deleted this claim. Second, the Court ordered that *allegations concerning claims* against dismissed parties be removed. The Court did not state that all allegations regarding these former parties must be removed. Additionally, as the parties are well aware from more than one recent conference

17

with the Court, the instruction that WDI amend its complaint was largely aimed at scaling down a massive complaint that failed to provide a short and plain statement of claims. Thus, WDI cut down its complaint from roughly 70 pages to 25 pages. As further discussed below, the Court did not intend, and its order should not be read, to forbid all passing references to the Saints, to the extent such limited references are relevant to the remaining claims in this lawsuit. Nor should the Court's order be construed to require WDI to have placed federal statutory citations in the complaint, as Storyville suggests in one part of its reply memorandum.

Storyville argues that WDI is unclear about whether the rights it allegedly received from the Saints are the same rights that it asserts against the remaining defendants. Storyville argues that if these allegations are not material, WDI should either make a more definite statement or join the Saints as a necessary party. The primary remaining references to the Saints and/or NFL concern a 1988 licensing agreement[16] and an agreement (set forth in detail in the complaint) of the Saints to transfer whatever trademark rights the Saints had to WDI.[17] The complaint also gives examples of other licensing agreements that WDI allegedly entered into. <u>See</u> Rec. Doc. 302, at 7-8, ¶ 25(a), (c). The Saints licensing

---

[16] Rec. Doc. 302, at 6, ¶ 23.

[17] Rec. Doc. 302, at 9-11, ¶¶ 30-33.

agreement is no less relevant than the other licensing agreements alleged in the complaint. Although the transfer-of-rights agreement largely appears to be leftover from the breach of contract claim originally brought against the Saints, WDI's allegations concerning the agreement have possible relevance to WDI's efforts to maintain its alleged goodwill in the trademarks at issue. <u>See</u> Rec. Doc. 302, at 9, ¶ 30 (prefacing discussion of the transfer agreement with a statement that WDI made investments in time, energy, and money to achieve widespread recognition of the phrase "Who Dat" as a mark); Rec. Doc. 302, at 11, ¶ 33 (stating that since the Saints transferred its rights to WDI, WDI has renewed a trademark registration twice).

The Court does not see the need for further amendment to reduce any more of the "Saints stuff," as Storyville describes it. However, the Court admonishes WDI that it will not be permitted to try this case as an action to enforce rights allegedly belonging to the Saints or the NFL. WDI will only be permitted to introduce evidence tending to show that *it* had trademark rights. The Saints and the NFL are no longer in this litigation, and WDI may not skirt the requirements of Rule 19 by trying the Saints'/NFL's potential case for them at trial.[18]

Next, Storyville objects to Paragraph 45, which appears to improperly attempt to incorporate facts from prior complaints:

---

[18] <u>See</u> FED. R. CIV. P. 19 (required joinder of parties).

> Who Dat?, Inc. hereby re-alleges, re-asserts, and
> incorporates by reference all facts alleged in its
> original, 1st Supplemental and Amending, 2nd Supplemental
> and Amending, and 3rd Supplemental and Amending
> Complaints, as if copied herein *in extenso*.

Rec. Doc. 302, at 14, ¶ 45 (emphasis in original). The Court ordered an amendment to the complaint, and WDI may not hedge its bets by bringing back in what was cut pursuant to Court order. However, the Court notes that WDI had agreed to voluntarily dismiss this paragraph. WDI submits the affidavit of its attorney, who avers that Storyville's attorney rejected the offer of WDI's attorney to amend the complaint to address the objections raised in Storyville's motion to strike. See Rec. Doc. 317, at 2. The Court will strike Paragraph 45.

In the next item, Storyville argues that the Fourth Amended Complaint fails to state a claim against it. For example, it argues that Count 7, a claim for product disparagement, does not indicate any details, but rather is a threadbare recital. As another example, it states that WDI's factual allegations regarding Storyville's infringing activities are implausible. Additionally, Storyville argues that the alleged trademark is ambiguous and should be stated more definitely. The Court is not persuaded by Storyville's arguments.

WDI's allegations are not unintelligible so as to prevent Storyville from responding and preparing its defense. Rather, Storyville is apparently agitated by the lack of detail. However,

the allegations comply with Rule 8's pleading requirements.  See Rec. Doc. 302, at 2, ¶ 1 (alleging that Storyville "placed in commerce goods with the WHO DAT phrase"); Rec. Doc. 302, at 3, ¶ 7 (alleging that Storyville has offered "various products for sale, including merchandise utilizing WHO DAT and variations thereof, both in its retail store in New Orleans and via its website (www.wearyourstory.com)."); Rec. Doc. 302, at 13, ¶ 39 (alleging that "Defendants have advertised and sold . . . merchandise, including jewelry, shirts and hats, bearing the 'WHO DAT' Trademarks"); Rec. Doc. 302, at 14, ¶ 42 ("The website operated by or for Storyville offered for sale merchandise reflecting its use of the 'WHO DAT' mark."); Rec. Doc. 302, at 20, ¶ 93 (alleging that Defendants have made statements in the press and elsewhere that were false and harmful with respect to the Who Dat marks).[19] Furthermore, that the allegations are more concise is to be praised rather than decried, as the Court previously instructed WDI to "read Federal Rule of Civil Procedure 8 and to submit a properly revised, restated, and amended complaint pursuant to the Court's previous instructions."  Rec. Doc. 279, at 1.

Finally, with respect to Paragraph 23, Storyville argues that the complaint improperly refers to a settlement agreement with the

---

[19] With respect to the product disparagement claim, there are no details regarding the alleged statements.  Rec. Doc. 302, at 20-21, ¶ 93.  However, the Court notes that Storyville has not moved under Rule 12(b)(6), but rather Rules 12(e) and (f).  The Court finds that the high standards for striking the claim or requiring a more definite statement are not met.

Saints and the NFL and should be stricken or more definitively stated to show its relevance. WDI has acknowledged in its opposition memorandum that this is a reference to a 1988 licensing agreement with the Saints, not a settlement agreement. The paragraph states that it pertains to a license agreement, and even if it were a passing reference to the 2012 settlement agreement (which WDI denies), the complaint does not state any details of such agreement. This contention is without merit. Storyville's motion will only be granted to the extent that Paragraph 45 will be stricken.

## B. Motion to Dismiss

Fleurty Girl moves to dismiss Counts 1 and 2 of WDI's Fourth Amended Complaint. While true that a Rule 12(b)(6) motion may be filed at any time prior to a decision at trial,[20] Fleurty Girl argues that WDI will not be prejudiced if the Court grants Fleurty Girl's motion.

Count 1 of the Fourth Amended Complaint is entitled "Request for Permanent Injunction." Rec. Doc. 302, at 14. It requests injunctive relief and purports to apply the elements for granting injunctive relief based on the alleged facts. However, injunctive relief is not itself a cause of action, but rather a remedy. See Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F. Supp.

---

[20] See FED. R. CIV. P. 12(h)(2)(c) (stating that the defense of failure to state a claim may be raised at trial).

285, 293 (S.D.N.Y. 1995) (stating that there was no "'injunctive' cause of action under New York or federal law," but, "[i]nstead, defendants must allege some wrongful conduct on the part of plaintiff for which their requested injunction is an appropriate remedy"); Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255, 1264 (W.D. Mo. 2001) (similar statement of law, and further stating that "a permanent injunction is a remedy and not a cause of action"). Accordingly, Count 1 should be dismissed, which, as Fleurty Girl acknowledged, does not have any practical effect on the outcome of this case because WDI has requested preliminary and permanent injunctive relief in its prayer. Rec. Doc. 302, at 22, ¶ XV(a).

Count 2 is entitled "Deceptive Advertising Under Louisiana Law." Rec. Doc. 302, at 15. It alleges that "Defendants made misleading or false factual representations of the quality or nature of Who Dat?, Inc.'s good or services . . . .". Rec. Doc. 302, at 15, ¶ 54. The complaint also states that "Defendants have advertised and sold" certain allegedly infringing items of merchandise. Rec. Doc. 302, at 13, ¶ 39. The Court finds that these allegations are sufficient to put the defendants on notice of the claim that they falsely advertised their products containing the phrase "Who Dat." See Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the

grounds upon which it rests."). Regarding Fleurty Girl's other argument, that Count 2 is deficient because it does not specify which Louisiana law forms the basis of the claim, Fleurty Girl cites no legal authority in support of this proposition. There is applicable state law that may provide WDI with an actionable legal theory. See LA. REV. STAT. § 51:1409(A) (LUTPA provision providing for private right of action based on another person's unfair or deceptive method, act, or practice declared unlawful under LUTPA). Accordingly, Count 2 will not be dismissed.

**C. Motion for Partial Summary Judgment**

Lastly, the Court reaches WDI's motion for partial summary judgment. With respect to the affirmative defense of functionality, little need be said. The Court already stated in its order and reasons regarding the defendants' motion for summary judgment:

> The Fifth Circuit's decision in <u>Smack Apparel</u> leaves no room for this Court to countenance Storyville's functionality argument. . . . [T]his court is bound by precedent suggesting that a consumer's desire to express his identity with a mark does not make it functional. "Who Dat" does not make a t-shirt work better. Therefore, it is not functional.

<u>Who Dat Yat Chat, LLC</u>, 2012 WL 1118602, at *15; Rec. Doc. 262, at 37-38. Although the Court acknowledges the detailed attention to the issue given by the defendants in their proffered analysis of disagreement with the Fifth and other circuits, weight of legal scholarship, and arguments as to what the law should be, the Court

must decline the defendants' invitation to disregard binding Fifth Circuit precedent. The affirmative defense of functionality must be dismissed, to the extent that it was not clear from the Court's prior order and reasons that the defense fails as a matter of law.

With respect to the affirmative defense of abandonment, this Court previously denied the defendants' motion for summary judgment, which motion requested dismissal based upon the defense of abandonment. After initially noting that "abandonment of the trademark applications is not evidence that WDI has not continued to use the marks," the Court found that there was "sufficient evidence of use for WDI to survive summary judgment on the movants' abandonment defense." Who Dat Yat Chat, LLC, 2012 WL 1118602, at *11; Rec. Doc. 262, at 28. The Court then stated that "WDI has submitted affidavits that, for summary judgment purposes, establish both the affixment of the phrase 'Who Dat' to and the sale of clothing items from the late 1980s until recently." Id. at 28-29. WDI now requests that the Court proceed one step further and hold, based upon the affidavits previously considered by the Court as well as some new affidavits and other evidence, that the defendants cannot overcome WDI's showing that there was no period of cessation of use from 1983 until the present, and the affirmative defense of abandonment should be dismissed.

For the defendants to prevail on their abandonment defense, they must prove two elements: "The party asserting abandonment

must establish that the owner of the mark both (1) discontinued use of the mark and (2) intended not to resume its use. The burden of proof is on the party claiming abandonment." <u>Vais Arms, Inc. v. Vais</u>, 383 F.3d 287, 293 (5th Cir. 2004). Three years of consecutive non-use is *prima facie* evidence of abandonment. 15 U.S.C. § 1127. Thus, the Court turns to the evidence submitted by WDI to determine whether it has made a showing that it continuously used its alleged Who Dat marks from 1983 until the present.

Although the mound of affidavit evidence is a bit cumbersome to grapple with, there are allegations that, accepted as true, establish WDI's use of its alleged Who Dat marks from 1983 until the present. There are a number of affidavits with blanket statements that WDI's Who Dat-branded merchandise has been offered for sale at all times, every year, from 1983 until the present. <u>See</u>, <u>e.g.</u>, Rec. Doc. 312-2, at 2 (Steve Monistere, "Since 1983"); Rec. Doc. 312-4, at 3 (Pam Randazza, "Since 1992"); Rec. Doc. 312-5, at 2 (Warren Hildebrand, "At all times since January 1, 1988"); Rec. Doc. 207-15, at 1 (John Mayeux, "At all times" since 1988 and "every year since 1988"). However, a couple of these assertions are suspect. <u>See</u> Rec. Doc. 312-2, at 2 (Steve Monistere, "Since 1983" allegation made with respect to goods and services, generally, rather than specific items such as t-shirts); Rec. Doc. 312-5, at 2 (Warren Hildebrand, stating that t-shirts were sold "for a period of time"). In any case, there are time periods more

specifically alleged that range from the 1980s until 2004. <u>See</u>
Rec. Doc. 312-3, at 2 (Frank Fortunato, 1988 through June 1997);
Rec. Doc. 312-6, at 2 (Bill Angelini, "At various times since 1988
through 2004," and alleging sales of some goods every year since
1998 until 2004); Rec. Doc. 312-2, at 3-4 (Steve Monistere, sales
pursuant to license agreements from 1988 until 1992, and sales by
other licensees from 1988 through 2004); Rec. Doc. 207-13, at 1
(Lucy Monistere, sales at all times from 1988 through June 2002).
Following the year 2004, the next chronological, year-specific
allegation is that there were sales made in 2007. Rec. Doc. 312-2,
at 4. If the more general "from-1983-until-the-present"
allegations were set aside, it is not clear whether there are year-
specific allegations of sales between 2004 and 2007, and whether
this intermittent time period would constitute a full three years
that would demonstrate a *prima facie* showing of abandonment. The
only remaining specific allegation beyond 2004 is that in 2009,
Gina Monistere visited a t-shirt shop, whose manager stated that
she still sells Who Dat shirts "every once in a while." Rec. Doc.
207-17, at 1. Much of this evidence was before the Court when it
ruled upon the prior motions for summary judgment.

Beyond these specific examples, the Court will not completely
rehash the evidence as it was described in the Court's denial of
the prior motions for summary judgment. <u>See</u> <u>Who Dat Yat Chat, LLC</u>,
2012 WL 1118602, at *11; Rec. Doc. 262, at 29-30. As can be seen

from the Court's prior and present descriptions of and quotations from these affidavits, they vary in their levels of specificity with respect to years of alleged use. Some allege the sale of merchandise in very general terms, such as "[a]t all times since January 1, 1988." Rec. Doc. 207-16. Others give specific ranges of years and portions thereof, such as one affidavit averring that the affiant offered for sale WDI-branded merchandise "[a]t all times from January 1, 1988 through mid June of 2002." Rec. Doc. 207-13, at 1. As previously noted, assuming that general allegations such as the former example are sufficient proof of continuous use for summary judgment purposes, WDI's affidavits "establish both the affixment of the phrase 'Who Dat' to and the sale of clothing items from the late 1980s until recently." Who Dat Yat Chat, LLC, 2012 WL 1118602, at *11; Rec. Doc. 262, at 28-29. Therefore, if reliance upon affidavits sans any other documentation is sufficient, the affidavits previously considered by the Court make a showing of WDI's continuous use at all relevant times, and, therefore, make an initial showing in favor of the dismissal of the defendants' abandonment defense.

As a general matter, sworn affidavits will support a grant of summary judgment. Moss v. BMC Software, Inc., 610 F.3d 917, 927 (5th Cir. 2010). Although Fleurty Girl repeatedly emphasizes that WDI has submitted scarcely any documentary evidence in support of its assertion that it has continuously used the alleged trademarks,

28

Fleurty Girl cites no directly applicable authority supporting the proposition that WDI's affidavits cannot establish use. Additionally, although Fleurty Girl challenges the specificity of language used in the affidavits, the Court does not find this quibbling to be persuasive. Fleurty Girl argues that Frank Fortunato's affidavit with regards to the sale of "merchandise" by The She Shop does not specify what merchandise was offered for sale during the asserted time period. Although the affidavit does generally refer to sales by The She Shop of Who-Dat branded "merchandise" without describing the specific goods, the affidavit states that the shop "was in the business of offering T-shirts and Novelties for sale to the general public through its retail location." Rec. Doc. 312-3, at 2. In context, the reference to the sale of merchandise bearing the Who Dat marks can properly be read as an assertion that t-shirts bearing the marks were sold. The same is true of the other affidavits that Fleurty Girl asserts are unspecific. See Rec. Doc. 312-4, at 3 (Black & Gold Shop's Pam Randazza stating that she purchased a variety of goods and merchandise, including bumper stickers and t-shirts containing the phrase "Who Dat," and alleging the continuous purchase of such "goods and merchandize [sic]" since the shop opened in 1992); Rec. Doc. 312-6, at 2 (affidavit of Bill Angelini containing statement that his businesses have sold "Who Dat" merchandise from 1988 until 2004, along with statement that his businesses offered t-shirts,

clothing, and other items for sale).

Notwithstanding, Fleurty Girl argues that material issues of fact remain because WDI is the party with access to and control of supporting documentary evidence and it has submitted very little documentation (e.g., sales and royalty records) in support of its summary judgment motion. It is true that WDI submitted little more than affidavits in support of its allegations of continuous use. The license agreement between WDI and Tees Unlimited states that it only applied until the end of the 1984-85 New Orleans Saints football season. Rec. Doc. 312-2, at 11. The license agreement with Southland Souvenirs was an agreement of identical duration. Id. at 21. The license agreement with Sports Celebrity Incentives, Inc. and the New Orleans Saints, although of more indefinite duration, only pertained to the manufacture and sale of "the official Saints Who Dat! Fan Club membership package, which includes a certificate, mini-pennant, membership card, key fob, lapel pin, button, and bumper sticker, as well as other goods" that WDI may specifically grant. Id. at 28. As far as documentary evidence of actual sales, the lone document submitted in support of WDI's motion is a 1992 invoice to Jim Moorehead Sportswear pertaining to 72 Who Dat t-shirts. Id. at 39.

WDI points out that its financial documents span thousands of pages over nearly 30 years of business, and WDI avers that it need not submit every document evidencing sales. However, Fleurty Girl

raises an important question as to why WDI did not provide any sort of summary of sales or other alternative documentary evidence. Fleurty Girl avers that WDI has not produced in discovery records or sales information showing gross revenues for the sale of Who Dat items from the last five years, although Who Dat had stated it would produce these records. In this situation, because Fleurty Girl's (and the other defendants') abandonment defense requires proof of a negative—that WDI did not use its marks for a length of time—although Fleurty Girl does ultimately bear the burden of proof, WDI should bear the burden of production of evidence within its possession pertinent to use. See <u>Allstate Finance Corp. v.</u> <u>Zimmerman</u>, 330 F.2d 740, 744 (5th Cir. 1964) ("Where the burden of proof of a negative fact normally rests on one party, but the other party has peculiar knowledge or control of the evidence as to such matter, the burden rests on the latter to produce such evidence, and failing, the negative will be presumed to have been established.").

Although WDI's affidavits establish an initial showing of continuous use, it is possible that the defendants cannot currently submit evidence under the circumstances alleged by Fleurty Girl. Specifically, Fleurty Girl avers that because it does not have necessary documentary evidence from WDI, Fleurty Girl has no documents on which to depose the declarants whose testimony WDI

uses to establish use of the Who Dat marks.[21]   Pursuant to the

Court's scheduling order continuing the trial, the revised

deposition deadline is September 4, 2012.  Rec. Doc. 296, at 1.

Fleurty Girl avers that it will depose the declarants by that

deadline.  Under these circumstances, the Court finds that factual

issues concerning the use of WDI's alleged Who Dat trademarks

preclude summary judgment dismissing the abandonment defense.[22]

    Because there is a factual dispute concerning use, the Court

will not address the second abandonment prong—whether WDI intended

not to resume use.  WDI argues that even if the defendants can show

---

    [21] Fleurty Girl's contention that it has no such documentation is at
least some answer to WDI's point that Fleurty Girl has not taken the
deposition of any WDI corporate representative or of the other affiants, since
the case was filed in 2010.

    [22] "If a nonmovant shows by affidavit or declaration that, for specified
reasons, it cannot present facts essential to justify its opposition, the
court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

FED. R. CIV. P. 56(d).  Additionally, denial of WDI's motion is appropriate
because of the Court's conclusion that there is substantial doubt as to
whether all the facts pertinent to use of the Who Dat marks from 1983 to the
present have been sufficiently developed.  See Marcus v. St. Paul Fire and
Marine Ins. Co., 651 F.2d 379, 382 (5th Cir. 1981) (noting that motion for
summary judgment should be denied for policy reasons, and that "the sound
exercise of judicial discretion dictates that the motion should be denied to
give the parties an opportunity to fully develop the case."); National Screen
Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962) ("The
moving party has the burden of positively and clearly demonstrating that there
is no genuine issue of fact and any doubt as to the existence of such an issue
is resolved against him."); cf. Veillon v. Exploration Servs., Inc., 876 F.2d
1197, 1200 (5th Cir. 1989) ("A district judge has the discretion to deny a
Rule 56 motion even if the movant otherwise successfully carries its burden of
proof if the judge has doubt as to the wisdom of terminating the case before a
full trial.").

that WDI discontinued use, there is no evidence that WDI intended to abandon its marks. It points to steps it has taken to register its marks, its policing of unauthorized use of the marks, and its expansion of the use of its marks in connection with new goods and services. However, "when a prima facie case of trademark abandonment exists because of nonuse of the mark for over two[23] consecutive years, the owner of the mark has the burden to demonstrate that circumstances do not justify the inference of intent not to resume use." Exxon Corp. v. Humble Exploration Co., Inc., 695 F.2d 96, 99 (5th Cir. 1982). As a result, because the Court resolves the issue of whether nonuse has been established in favor of the nonmovants, for summary judgment purposes, WDI bears the burden of demonstrating that the inference of non-intent to resume use is inappropriate. The Court will not resolve the factual dispute regarding intent on this record.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Storyville's Motion to Strike and for a More Definite Statement Under Rule 12 (Rec. Doc. 304) is **GRANTED IN PART AND DENIED IN PART**. It is only granted to the extent that Paragraph 45 of the Fourth Amended Complaint is hereby **STRICKEN**.

---

[23] The Humble decision was based on a statute that provided a two-year period, rather than the current statutory three-year period of nonuse required to trigger the statutory prima facie showing of abandonment.

**IT IS FURTHER ORDERED** that Fleurty Girl's Motion to Dismiss Counts 1 and 2 of Who Dat?, Inc.'s Fourth Amended Complaint (Rec. Doc. 309) is **GRANTED IN PART AND DENIED IN PART**. It is only granted to the extent that Count 1 of WDI's Fourth Amended Complaint is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that WDI's Motion for Partial Summary Judgment Dismissing Affirmative Defenses of Functionality and Abandonment (Rec. Doc. 312) is **GRANTED IN PART AND DENIED IN PART**. It is only granted to the extent that the defendants' functionality defense is hereby **DISMISSED**.

New Orleans, Louisiana, this 8th day of June, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE